UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
———————————————————————

TIMOTHY J. FOSS,

                Petitioner,

        V.

SUPERINTENDENT,[1]

                Respondent.

———————————————————————

**REPORT AND
RECOMMENDATION**

01-CV-420

## I. INTRODUCTION

Petitioner, Timothy J. Foss, acting *pro se*, commenced this action seeking habeas

corpus relief under 28 U.S.C. § 2254.  Petitioner, presently an inmate at the Auburn

Correctional Facility,  was convicted in a New York State court of two counts of Second

Degree Murder, one count of First Degree Robbery, and one count of Second Degree

Robbery and was sentenced to a term of imprisonment in 1996.  He contends that his

conviction was imposed in violation of his constitutional rights and should be vacated.

This matter was referred to the undersigned by the Honorable Norman A. Mordue,

Chief United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and is

presently before this Court for a report and recommendation. (Docket No. 35).

———————————————————————

[1]Because Petitioner is presently incarcerated in the Auburn Correctional Facility, the correct
Respondent in this Petition is John Burge, the Superintendent of the Auburn Correctional Facility.  28
U.S.C. § 2243.  In light of Petitioner's *pro se* status, the fact that this will not prejudice Respondent, and in
the interests of court efficiency, this Court will deem the Petition amended to change the name of
Respondent to John Burge.
     The Clerk of the Court is directed to terminate "Superintendent" as Respondent, add John Burge,
Superintendent of the Auburn Correctional Facility, as the new Respondent, and revise the caption of this
case accordingly.

## II. BACKGROUND

### A.    Facts

The following factual summary is derived from testimony at Petitioner's trial.   On September 21, 1994, the remains of Jonathan Boylston ("Boylston") were found in a wooded area in the City of Albany, New York.  (T at 178-81).[2]  Boylston's skull was partially caved in. (Id. at 591).  An autopsy revealed that the cause of death was massive brain damage due to head trauma caused by multiple blows delivered to the front and back of the skull. (Id. at 595).

According to the trial testimony, Petitioner was involved in the sale of marijuana.  On or about June 18, 1994, Boylston, a marijuana dealer, visited Petitioner to collect a debt. (Id. at 215-21, 527).   A physical altercation between Boylston and Petitioner ensued. Petitioner picked up a hammer and hit Boylston in the head. (Id.).  Petitioner then moved Boylston's body to a bathtub, cleaned it, and later dumped it in a remote location in Albany. (Id.).

In August of 1994, Petitioner moved to Florida, where he lived with his parents.  (Id. at 305-07).  After the discovery of Boylston's body, Albany Police Detectives Anthony Bruno and James Lyman contacted Petitioner's former girlfriend, Marcy Stiffen ("Stiffen"), as part of their investigation.   (Id.).   Having learned that Petitioner had moved to Florida, the detectives gave Stiffen their pager numbers and asked her to contact them in the event she saw Petitioner again.  On April 12, 1995, Petitioner returned to Albany and visited Stiffen's

---

[2]References preceded by "T" are to the transcript pages of Petitioner's trial.  Defendant was represented by Michael Katzer, Esq. at trial.

apartment.   (Id. at 33-36).   Stiffen telephoned Detective Bruno and complained that Petitioner was harassing her.  (Id. at 34).  The police then took Petitioner into custody on the charge of menacing.

The police interrogated Petitioner with respect to the Boylston murder.  (Id. at 510-28).  During the interrogation, Petitioner gave two incriminating statements concerning his involvement in Boylston's death.  (Id. at 513, 526-28).  Petitioner was formally charged with Boylston's murder on April 13, 1995.  (Id. at 516).

On April 18, 1995, an Albany County grand jury issued indictment number 950539,[3] charging Petitioner with three counts of Murder in the Second Degree, in violation of New York Penal Law ("N.Y.P.L.") §125.25(3), §125.25(1), and §125.25(2); one count of Robbery in the First Degree, in violation of N.Y.P.L. §160.15(3); and one count of Robbery in the Second Degree, in violation of N.Y.P.L. §160.10(1).  Petitioner pled not guilty to all charges.

## B.      State Trial Court Proceedings

The Honorable Thomas A. Breslin, Albany County Court Judge, presided over Petitioner's trial court proceedings.  On July 13, 1995, a Suppression Hearing was held concerning the statements Petitioner made while in custody.  Petitioner's attorney alleged that Petitioner's arrest for menacing was pretextual and used for the purpose of interrogating

---

[3]Petitioner was indicted along with Eric Johnson ("Johnson"), who was indicted for Robbery in the First Degree, Robbery in the Second Degree and Felony Murder. Johnson was alleged to have been sitting in Petitioner's apartment while Petitioner allegedly hit Boylston in the head with the hammer and robbed him. After trial, Johnson was found guilty only of Felony Murder and acquitted of the underlying Robbery charges.  Johnson appealed to the Appellate Division, Third Department.  The Appellate Division overturned Johnson's conviction for insufficient evidence.  People v. Johnson, 673 N.Y.S.2d 765 (3d Dep't 1998).  Leave to appeal was denied by the Court of Appeals on August 31, 1998.  People v. Johnson, 92 N.Y.2d 899 (1998).

him about Boylston's murder.  (SH at 45).[4]  Judge Breslin denied the motion to suppress Petitioner's statements.  (Id. at 128).  The Court held that the menacing arrest was not pretextual and that there was probable cause to arrest Petitioner, "not only [for] menacing but on several other crimes."  (Id.).  The Court also found that Petitioner was given the proper Miranda[5] warnings "not once, but three different times. . ." and that his statements were voluntary.  (Id.).

Petitioner's trial began on April 4, 1996.  On April 15, 1996, the jury found Petitioner guilty of count one of felony Murder in the Second Degree and count three murder with depraved indifference, one count of Robbery in the First Degree, and one count of Robbery in the Second Degree.  (T at 942-44).  Petitioner was found not guilty of count two, intentional Murder in the Second Degree.  (Id. at 944).

Judge Breslin sentenced Petitioner on May 29, 1996.  On the first count of Murder in the Second Degree, felony murder, Petitioner was sentenced to 25 years to life imprisonment to run concurrent with the sentence of 25 years to life for count three,  depraved indifference murder; on the count of Robbery in the First Degree, Petitioner was sentenced to an indeterminate term of eight and one-third years to 25 years; on the count of Robbery in the Second Degree, Petitioner was sentenced to five to 15 years (both robbery counts to run concurrent to the felony murder conviction and consecutive to the depraved indifference murder).  (S at 24-25)[6].

---

[4]References preceded by "SH" are to the transcript pages of Petitioner's Suppression Hearing held on July 13, 1995.

[5]Miranda v. Arizona, 384 U.S. 436 (1966).

[6]References preceded by "S." are to the transcript pages of the sentencing proceeding held before Albany County Court Justice Thomas Breslin on March 29, 1996.

**C.      State Appellate Proceedings**

In May of 1996, Petitioner, through his attorney,  filed two motions to set aside his conviction pursuant to Criminal Procedure Law §330.30.  In the first §330.30 motion, Petitioner claimed that the trial court's jury charge on causation was too broad and argued that it was error for the trial court to admit an earring into evidence.

The second §330.30 motion stemmed from a phone call that a juror made to Petitioner's attorney after the trial, but before sentencing.  On May 8, 1996, one of the jurors, Sally Strong ("Strong"), telephoned Petitioner's trial attorney and stated that she would have returned a different verdict if Petitioner had testified that he did not touch or use the hammer.  Petitioner argued that Strong's consideration of his failure to testify violated the jury instructions she was given, as well as his basic constitutional rights.

On May 29, 1996, at the sentencing hearing, Judge Breslin denied Petitioner's § 330.30 motions.  (S at 5,8).  Judge Breslin stated that he already ruled on Petitioner's arguments with respect to the jury charge and the earring during trial.  (Id. at 5).  As for the juror's statement to Petitioner's attorney, Judge Breslin found that jurors often "have second thoughts, five, ten, fifteen years later." (Id. at 8).  The trial court concluded that this was not a basis to set aside a verdict and that to do so "would be to allow this juror to impeach her verdict, which is absolutely contrary to the law of this state."  (Id.).

Petitioner then appealed his conviction to the Appellate Division, Third Department, of the New York State Supreme Court.  Petitioner raised the following arguments in support of his appeal: (1) that his incriminating statements should have been suppressed because his arrest for menacing was a pretext for interrogating him regarding the homicide, (2) that the trial court erred when it admitted into evidence

5

photographs of Boylston before he died and a photograph of his skeletal remains after he died, (3) that the trial court erred when it admitted an earring, alleged to have belonged to the victim, found in Petitioner's personal effects, (4) that Petitioner was deprived of his right to a fair trial by virtue of trial court's excessive and harsh reprimands of defense counsel throughout the trial, (5) that reversal was warranted by reason of infirmities in those portions of the trial court's charge to the jury on felony murder, the voluntariness of defendant's statements, and the issue of causation, (6) that it was improper for the prosecutor to tell the jury in summation that "[y]ou don't even have to leave your seats to convict [Petitioner] of felony murder", (7) that the trial court erred by denying his motion to vacate the judgment based upon juror misconduct, and (8) that the trial court erred when it imposed consecutive sentences for the robbery counts and depraved indifference murder count.

In a decision issued on December 2, 1999, the Appellate Division affirmed Petitioner's conviction, while modifying his sentence.  People v. Foss, 700 N.Y.S.2d 499, 505 (3d Dep't 1999).  The Appellate Division stated that "we conclude that although the proceedings were not error free, these errors neither individually nor cumulatively operated to deprive defendant of a fair trial."  Id. at 502.

On April 25, 2000, the New York Court of Appeals denied Petitioner's motion for leave to appeal.  People v. Foss, 94 N.Y. 2d 947 (2000).

**D.    Federal Habeas Corpus Proceedings**

Petitioner commenced this action on March 22, 2001, by filing a *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Docket No. 1).

6

Respondent filed submissions in opposition.  (Docket No. 6 & 7).  Thereafter, Petitioner amended his Petition on April 1, 2002 to include one additional ground for habeas relief. (Docket No. 27).  In it, Petitioner asserts seven of the eight claims, listed above, that he presented to the Appellate Division.[7]   Respondent filed further submissions in opposition.  (Docket No. 28 & 29).

For the reasons that follow, the Court recommends that Foss's petition for a writ of habeas corpus be denied and that his petition be DISMISSED.

## III. DISCUSSION

**A.      Federal Habeas Corpus Standard**

Federal habeas corpus review of a state court conviction is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under  AEDPA, federal courts must give substantial deference to a state court determination that has adjudicated a federal constitutional claim "on the merits."  28 U.S.C. § 2254(d); Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir. 2001). The Second Circuit has stated that an "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim."  Sellan, 261 F.3d at 313 (quotation omitted).  The Second Circuit has also held that even a one-word denial of a petitioner's claim is sufficient to constitute an "adjudication on the merits" for purposes of AEDPA.  Id. at 312-313.

---

[7]Claim number eight that Petitioner does not bring before this Court was that his sentence was incorrect.  The Appellate Division already remedied that claim by modifying his sentence.

Specifically, AEDPA requires that where a state court has adjudicated the merits of a Petitioner's federal claim, habeas corpus relief may not be granted unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

While both AEDPA and its predecessor statute recognize that a presumption of correctness shall apply to state court findings of fact, Whitaker v. Meachum, 123 F.3d 714, 715 n. 1 (2d Cir. 1997), AEDPA also requires a Petitioner to rebut that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); LanFranco v. Murray, 313 F.3d 112, 117 (2d Cir. 2002). A presumption of correctness applies to findings by both state trial and appellate courts. Galarza v. Keane, 252 F.3d 630, 635 (2d Cir. 2001); Whitaker, 123 F.3d at 715 n.1.

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court defined the phrases "contrary to" and "unreasonable application of" clearly established federal law. A state court decision is "contrary to clearly established federal law . . . if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts." Id.

A state court decision involves "an unreasonable application of" Supreme Court

8

case law if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case." Id.

Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

### B.    Petitioner's Claims

As stated above, Petitioner asserts seven of the eight claims that he asserted in his appeal to the Appellate Division in support of this Petition. Each of these claims is discussed below.

### 1.    Identification of the Earring

In his state court appeal, Petitioner asserted two claims regarding the admission of a certain earring into evidence. First, Petitioner argued that the identifying witness's identification was insufficient to justify admission of the earring into evidence. Second, Petitioner claimed that the earring was obtained as a result of an illegal search and seizure.

As to the identification question, the Appellate Division stated that "[w]e would

9

be inclined to agree . . . that the earring should not have been admitted into evidence on the strength of the identifying witness' testimony that it 'looked like' an earring owned by the victim." People v. Foss, 700 N.Y.S.2d at 502.   However, the appeals court held that "[a]side from the fact that this claim is not adequately preserved since defendant did not object to the earring's admission on that basis, we deem any error in its receipt to be harmless." Id. at 503.

### a.   Procedural Bar

Ordinarily, the failure to preserve a claim for appellate review constitutes procedural default and bars federal habeas corpus review. See Manzella v. Senkowski, No. 97-CV-921, 2004 WL 1498195, at *28 (W.D.N.Y. July 2, 2004); Cabassa v. Filion, No. 03 CIV. 2920, 2004 WL 1367503, at *5 (S.D.N.Y. June 16, 2004).

Where the highest state court that rendered a judgment in the case "clearly and expressly states that its judgment rests on a state procedural bar," such procedural default constitutes independent and adequate state grounds to deny habeas relief. Harris v. Reed, 489 U.S. 255, 263 (1989) (internal quotations and citations omitted); see also Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir.1996); Levine v. Commissioner of Corr. Servs., 44 F.3d 121, 126 (2d Cir.1995).   In such cases, a federal court is generally barred from reviewing a petitioner's claims.

In this case, the Appellate Division expressly referenced the fact that Petitioner's earring claim had not been "adequately preserved" due to the failure to object to the admission of the earring "on that basis."   While the Appellate Division also suggested that the admission of the earring was harmless error, the court did not discuss or explain this finding and did not state that it was, in fact, inclined to overlook or excuse

the procedural default.  Rather, the court simply indicated that even *if* it were to overlook the procedural default, any error would have been deemed harmless.

The appeals court's language indicates that its decision was based primarily upon the fact that the claim had not been preserved for appellate review.  Accordingly, this Court finds that it is barred from reviewing Petitioner's earring claim because the Appellate Division's rejection of Petitioner's earring claim was clearly based upon the procedural default.  Harris, 489 U.S. at 262; see also, Glenn, 98 F.3d at 724.

### b.   Merits of Petitioner's Evidentiary Claim

Moreover, even if this Court were to consider Petitioner's claim concerning the earring identification on the merits, the claim should be DENIED.

Ordinarily, state court rulings on evidentiary matters are matters of state law and "are not reviewable by a habeas court unless the errors alleged are so prejudicial as to constitute fundamental unfairness."  Rosario v. Kuhlman, 839 F.2d 918, 924-25 (2d Cir. 1988); see also, Lipinski v. People of New York, 557 F.2d 289, 292 (2d Cir. 1977) ("The states have traditionally been accorded great latitude in determining rules of evidence to govern proceedings in their own courts.  In this sensitive area, characterized by delicate and interrelated judgments of fairness and efficiency, the federal courts have trod lightly to refrain from abrasive disruptions of state procedures and to avoid rigidity in an area of law that should be, above all others, empirical.").

The Second Circuit Court of Appeals has noted that in order for a petitioner to prevail on these claims, he would have to show that "the erroneously admitted evidence, [when] viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt

that would have existed on the record without it." Collins v. Scully, 755 F.2d 16, 19 (2d Cir.1985); see Dunnigan v. Keane 137 F.3d 117, 125 (2d Cir. 1998).  The evidence must be "'crucial, critical, [and] highly significant.'" Collins, 755 F.2d at 19 (internal citations omitted).

In the present case, the earring was introduced as evidence that Petitioner had robbed the victim, Boylston.  The earring was found among Petitioner's belongings and the victim's sister testified that the earring "looked like" an earring that she had given to the victim.  It appears that the earring was a highly significant piece of evidence.  However, this Court further finds that the admission of the earring was not an error of constitutional magnitude.

As a threshold matter, it must be noted that although the Appellate Division suggested that it was "inclined" to view the admission of the earring as error, the court did not actually make any such finding.  Further, the Appellate Division did not provide any explanation or cite any legal authority to support its "inclination" regarding the admission of the earring.

In essence, Petitioner's argument is that the identifying witnesses's testimony that the earring "looked like" an earring that belonged to the victim was insufficient to justify the admission of that piece of evidence.

However, any question as to whether the earring actually belonged to the victim bears upon the weight that the jury could give to the earring, rather than its admissibility. See Santos v. Portuondo, No. 97-CV-6161, 1999 WL 684165, at *2, *4 (E.D.N.Y. July 21, 1999) (finding the trial court properly admitted knife on the basis of testimony that it was "similar to" knife used in crime and that any question as to whether it was actually

12

the robbery weapon "went to the weight the jury could give the evidence, not to its admissibility") (citing <u>United States v. Robinson</u>, 560 F.2d 507, 512 (2d Cir. 1977)); <u>see also</u>, 77 C.J.S. <u>Robbery</u> § 80 (1994) (noting that evidence is admissible "to show the accused's subsequent possession of property . . . which, because of its similarity to that taken, might have been the stolen property, the fact that such evidence is inconclusive affecting its probative force, but not its admissibility").

Accordingly, Petitioner's claim for relief on this ground should be DENIED on the basis that it is procedurally defaulted and, in the alternative, because the admission of the earring was not clearly erroneous.

### 2.   Search and Seizure

Petitioner also claims that the earring should have been suppressed because it was discovered as the result of an unlawful search and seizure of his property.

In <u>Stone v. Powell</u>, 428 U.S. 465, 482 (1976), the Supreme Court held that "where the State has provided an *opportunity* for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." (emphasis added).

Following <u>Stone</u>, the Second Circuit developed a "litmus test to discern when a state prisoner has been denied an opportunity for full and fair litigation of his fourth amendment claims." <u>Capellan v. Riley</u>, 975 F.2d 67, 69-71 (2d Cir. 1992)(citing <u>Gates v. Henderson</u>, 568 F.2d 830 (2d Cir. 1977)(en banc)).

The Second Circuit has concluded that review of Fourth Amendment claims presented by habeas petitioners would be undertaken in only one of two instances: (a)

if the State provided no corrective procedures at all to redress the alleged Fourth Amendment violations; or (b) if the State has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an "unconscionable breakdown in the underlying process." Id. (quoting Gates, 569 F.2d at 840 and citing McPhail v. Warden Attica Correctional Facility, 707 F.2d 67, 70 (2d. Cir 1983)).

"The federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in N.Y.Crim. Proc. Law § 710. 10 *et seq.* (McKinney 1984 & Supp.1988), as being facially adequate.' " Capellan, 975 F.2d at 70 n.1 (quoting Holmes v. Scully, 706 F. Supp. 195, 201 (E.D.N.Y. 1989) and citing Gates, 568 F.2d at 837 & n.4; Shaw v. Scully, 654 F. Supp. 859, 864 (S.D.N.Y. 1987)).

Here, Petitioner does not contend that New York failed to provide a corrective procedure to redress his alleged Fourth Amendment claim. Indeed, Petitioner actually took advantage of New York's procedure for litigating his Fourth Amendment claim, raising it before the trial court in an oral motion and then pursuing the same claim on direct appeal to the intermediate appellate court.

Petitioner has not made any allegations that "an unconscionable breakdown" occurred in the existing process in violation of his constitutional rights; rather, he asserts only that the state courts erred in deciding his claim. This, however, is insufficient for purposes of allowing the Fourth Amendment claim to proceed on federal habeas review. See Capellan, 975 F.2d at 71 ("Even if [Petitioner] were correct in his allegation that the Appellate Division erroneously decided this issue, a petitioner cannot gain federal review of a fourth amendment claim simply because the federal court may have reached a different result.") (citing Gates, 568 F.2d at 839).

14

The Second Circuit explained that reading <u>Stone v. Powell</u> as requiring the reviewing court "to focus on the correctness of the outcome resulting from the application of adequate state court corrective procedures, rather than on the existence and application of the corrective procedures themselves, would be assuming, implicitly at least, that state courts were not responsible forums in which to bring constitutional claims such as is presented herein." <u>Capellan</u> 975 F.2d at 71.

Thus, to the extent that Petitioner claims that the state courts erred in their rulings, this does not give this Court the authority to review his claims "since a mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process." <u>Id.</u>            .

Accordingly, Petitioner's Fourth Amendment claim with respect to the admission of the earring is not cognizable in this federal habeas proceeding and should be DISMISSED.

### 3.    Admission of the Photographs

Petitioner next claims that his constitutional rights were violated by the admission of certain photographs of the victim into evidence.  The photographs were of Boylston both while he was alive and of his skeletal remains.

As this Court has previously noted, under New York law, "photographs are admissible if they tend 'to prove or disprove a disputed or material issue, to illustrate or elucidate other relevant evidence, or to corroborate or disprove some other evidence offered or to be offered[,]' . . . and . . . should be excluded 'only if [their] sole purpose is to arouse the emotions of the jury and to prejudice the defendant[.]' " <u>Barnard v. Burbary</u>, 452 F. Supp. 2d 178, 191 (W.D.N.Y.,2006) (quoting <u>People v. Wood</u>, 79

N.Y.2d 958, 582 N.Y.S.2d 992, 591 N.E.2d 1178 (N.Y.1992)).

In addition, this Court is mindful that, on habeas review, its role in reviewing claims of evidentiary error by the state trial court is circumscribed. See, e.g., Taylor v. Curry, 708 F.2d 886, 891 (2d Cir.1983) ("The finding of error does not, however, determine the outcome of this appeal. Erroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus. Rather, the writ would issue only where petitioner can show that the error deprived her of a fundamentally fair trial.") (citing Chambers v. Mississippi, 410 U.S. 284, 302-03 (1973) (emphasis in original)).

Accordingly, the critical question for this Court is not whether the trial court properly admitted the photographs; the only issue is whether the decision denied Petitioner a "fundamentally fair" trial. As set forth below, this Court finds that Petitioner's trial was fundamentally fair.

First, the trial court gave a limiting instruction to the jury regarding the photographs. Specifically, the court instructed the jury "not to dwell upon these photographs during [their] deliberations." (T at 867). The trial court also instructed the jurors that when viewing the photographs to "do so quickly, calmly and unemotionally." (Id.). This instruction is significant because, as this Court has noted, jurors are generally presumed to follow their instructions. Barnard, 452 F. Supp. 2d at 193 (collecting cases). However, this Court notes that the better practice would have been for the trial court to have balanced the probative value of the photographs against their possible prejudicial effect and determine whether the photographs were being offered solely to arouse the emotions of the jury or had that potential. People v. Wemette, 728

16

N.Y.S.2d 805, 807 (3d Dep't 2001) (holding that "[t]he admissibility of photographic evidence which is relevant to prove or disprove a material issue is within the discretion of the trial court and such evidence 'should be excluded only if its sole purpose is to arouse the emotions of the jury'"); People v. DeBerry, 651 N.Y.S.2d 559, 560 (2d Dep't 1996) (noting that trial court was required to weigh probative value of photographs against "the potential for prejudice").

In any event, however, a review of the record reveals that the photographs were not the basis for Petitioner's conviction. There was more than sufficient evidence of Petitioner's involvement in Boylston's death. Foremost amongst that evidence is Petitioner's own sworn statement that he hit Boylston in the head with a hammer, washed Boylston's body in the bath tub, and took part in dumping the body in a remote location. (T at 526-528). Therefore, even if the photographs were excluded, there would still have been a sufficient basis for Petitioner's conviction. See Collins, 755 F.2d at 19. Therefore, admission of the photographs did not deprive Petitioner of a fundamentally fair trial. Taylor, 708 F.2d at 891.

Accordingly, Petitioner's claims for habeas relief based on the admission of the photographs should be DENIED.

### 4.   Prosecutorial Misconduct

Petitioner claims that comments made by the prosecution in its summation and the trial court's failure to admonish the prosecutor deprived him of a fair trial. Specifically, the prosecutor told the jury during summation that "[y]ou don't even have to leave your seats . . . to convict [defendant] of felony murder." (T at 855). Defense counsel properly objected to the prosecutor's statement, allowing for this Court's review

17

of Petitioner's claim.  U.S. v. Ortiz,  857 F.2d 900, 904 (2d Cir. 1988) (appellate review of statements made in prosecution's summation is limited to statements to which an objection is made).

The habeas court's scope of review as to claims of prosecutorial misconduct is quite limited.  In order to overturn a conviction, the Court must find that the prosecutor's comments constituted more than mere trial error and instead were so egregious as to violate the petitioner's due process rights.  See Donnelly v. DeChristoforo, 416 U.S. 637, 647-48 (1974); Floyd v. Meachum, 907 F.2d 347, 353 (2d Cir.1990) ("The appropriate standard of review for a claim of prosecutorial misconduct on a writ of habeas corpus is the narrow one of due process, and not the broad exercise of supervisory power.") (internal quotation marks and citations omitted); accord Tankleff v. Senkowski, 135 F.3d 235, 252 (2d Cir.1998).

Thus, to be entitled to relief, Petitioner must show that he "'suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict.' "  Tankleff, 135 F.3d at 252 (quoting Bentley v. Scully, 41 F.3d 818, 823 (2d Cir.1994) (internal quotation marks and citation omitted in original)). "Rarely are comments in a prosecutor's summation 'so prejudicial that a new trial is required.' " United States v. Germosen, 139 F.3d 120, 128 (2d Cir.1998) (quoting United States v. Forlorma, 94 F.3d 91, 93 (2d Cir.1996) (quotations omitted).  Reversal of a defendant's conviction is warranted only where " 'the statements, viewed against the entire argument before the jury, deprived the defendant of a fair trial.' " Id. (quoting Forlorma, 94 F.3d at 94).

In determining whether a defendant has suffered actual prejudice as a result of

the prosecutorial misconduct, the reviewing court considers three key factors: "the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements." Floyd, 907 F.2d at 355 (quoting United States v. Modica, 663 F.2d 1173, 1181 (2d Cir.1981) (per curiam)); accord, e.g., Germosen, 139 F.3d at 128; United States v. Miller, 116 F.3d 641, 683 (2d Cir.1997); United States v. Perez, 144 F.3d 204, 209 (2d Cir. 1998).

In the present case, this Court finds that the prosecutor's summation statement that "[y]ou don't even have to leave your seats . . . to convict [defendant] of felony murder" was improper.  The prosecutor should not have suggested to the jury that it be derelict in its duty to deliberate.  However, it appears that the prosecutor's misconduct was confined to that single statement during summation.

This Court finds that although the prosecutor's remark was improper, it did not deprive Petitioner of a fundamentally fair trial because Petitioner was not substantially prejudiced by the isolated remark.    As the Second Circuit has noted, "[o]ften, the existence of substantial prejudice turns upon the strength of the government's case: if proof of guilt is strong, then the prejudicial effect of the comments tends to be deemed insubstantial; if proof of guilt is weak, then improper statements are more likely to result in reversal." Modica, 663 F.2d at 1181, see also, Bentley, 41 F.3d 818, 824 (2d Cir. 1994)(holding that review of a habeas corpus challenge based upon prosecutorial misconduct includes consideration of "whether the conviction was certain absent the prejudicial conduct.").

Here, as noted above, the proof of Petitioner's guilt was certainly sufficient to support the verdict against him.  This Court finds that there is no indication that the

prosecutor's single remark during summation had a substantial and injurious effect or influence in determining the jury's verdict.  Tankleff, 135 F.3d at 252.

In addition, the trial court instructed the jury regarding its duty to deliberate and consider the evidence.  (T at 861-62, 864, 872, & 876).  In light of the well-established presumption that jurors follow their instructions, Barnard, 452 F. Supp. 2d 178, 193, the instructions given regarding the jury's duty to deliberate acted as a curative measure with respect to the prosecutor's remark.

In sum, this Court finds that the prosecutor's improper remark during summation was not so prejudicial as to have denied Petitioner a fair trial.  See Bentley, 41 F.3d at 824.  Therefore, Petitioner's claim for habeas relief on this ground should be DENIED.

### 5.    Jury Instructions

In his next claim for habeas relief, Petitioner alleges that the trial court failed to properly charge the jury.  Specifically, Petitioner objects to certain portions of the trial court's charge to the jury on felony murder, the voluntariness of defendant's statements, and causation.[8]

The adequacy of a court's instructions to a jury is normally a matter of state law.  See Cupp v. Naughten, 414 U.S. 141, 146 (1973).  Since habeas relief requires the

---

[8]In Petitioner's *pro se* brief, he states that he claims infirmity in "three specific portions of the trial court;s (sic) charge to the jury."  (Docket No. 27 at p. 5-e).  Although, he only goes on to discuss the first two; the felony murder charge and the charge on voluntariness of statements. (Id.).   Since the rest of the claims in his Petition are the same as the claims he brought before the Appellate Division, it is safe to assume that the third charge he asserts is inadequate is the charge on causation.  See People v. Foss, 700 N.Y.S.2d at 504-05.   Because Petitioner is proceeding *pro se*, this Court is obliged to construe his pleadings liberally and will therefore discuss the charge on causation. McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir.2004); see also Fleming v. United States, 146 F.3d 88, 90 (2d Cir.1998) ( *per curiam* ) (holding that a district court must review *pro se* petitions "with a lenient eye, allowing borderline cases to proceed") (quotation omitted).

petitioner to predicate his claims on a violation of the federal Constitution, Petitioner must show that the trial court's failure to give certain jury instructions violated some right guaranteed to him by the Fourteenth Amendment.  Id. at 146.  It is not sufficient to simply show that the court's omission in instructing the jury was erroneously deficient under state law.  Id.

It is well-settled that "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge."  Boyd v. United States, 271 U.S. 104, 107(1926).

> "While this does not mean that an instruction by itself may never rise to the level of constitutional error, Cool v. United States, 409 U.S. 100 (1972), it does recognize that a conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge. Thus not only is the challenged instruction but one of many such instructions, but the process of instruction itself is but one of several components of the trial which may result in the judgment of conviction."

Cupp, 414 U.S. at 146-147; see also, Henderson v. Kibbe, 431 U.S. 145, 152 (1977).

"The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal."  Henderson, 431 U.S. at 154.  "The question in such a collateral proceeding is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process', not merely whether 'the instruction is undesirable, erroneous, or even 'universally condemned,' "  Id. (citing Cupp, 414 U.S. at 146, 147).

As a threshold matter, this Court must determine whether the trial court's instructions to the jury were improper under New York law.  Davis v. Strack, 270 F.3d

111, 123 (2d Cir. 2001) (holding that while a court "may not grant habeas relief for a 'mere error of state law,' . . . a finding that the petitioner was erroneously deprived of a jury instruction to which he was entitled under state law is the first step in the determination whether that error violated the petitioner's federal due process rights") (internal citation omitted); see also, Jackson v. Edwards, 404 F.3d 612, 621 (2d Cir. 2005) (holding the same).

The Court is "mindful that [Petitioner's] challenge to the trial court's instruction arises on habeas review, and [its] inquiry is whether the instruction is constitutional, not whether it is exemplary." Vargas v. Keane, 86 F.3d 1273 at 1280 (2d Cir. 1996).

### a.    Felony Murder Charge

Petitioner claims that the trial court erred when it failed to charge the jury that in order to find him guilty of felony murder, they had to find, beyond a reasonable doubt, that his intent to rob Boylston was formed prior to the murder.

This Court finds that the trial court's instruction as to this issue was proper under New York law. (T at 880-83).  Specifically, the trial court charged that to convict Petitioner of felony murder it had to find that Petitioner, with the requisite intent, "caused the death of Jonathan Boylston while in the commission of robbery or of immediate flight therefrom." (Id. at 881).  The trial court repeated that instruction more than once and specified each of the elements that the jurors needed to make findings on. (Id. at 882-83).  The jury charge conveyed the requirement that the intent to rob the victim had to be formed prior  to the murder.  Id.

Because the trial court's instructions were proper under New York law, Petitioner cannot show that the trial court's instruction resulted in a "complete

22

miscarriage of justice."  Hill, 368 U.S. at 242; see People v. Emmick, 551 N.Y.S.2d 119 (4th Dep't 1998); People v. Dering, 528 N.Y.S.2d 622 (2d Dep't 1988).   Accordingly, Petitioner's claim for relief on this ground should be DENIED.

    **b.    Voluntariness of Statements Charge**

    Petitioner next asserts that the trial court erred when it refused to use the language of the standard Criminal Jury Instructions § 11.10 when charging the jury on the voluntariness of his incriminating statements.  The trial court's charge instructed the jury that "you cannot consider the statement unless the People have established that the statement was actually made, that the contents of the statement were actually told to the police by the defendant.  The defendant has no burden to prove that he did not make the statement."  (T at 877).

    The only difference between CJI §11.10's instruction and the one given by the trial court is that the CJI's instruction goes on to say that the People must prove the statement was given *"beyond a reasonable doubt*."   See CJI § 11.10. (emphasis added).

    This Court is not persuaded that the trial court's failure to include the phrase "beyond a reasonable doubt" in one specific part of the overall instruction so infected the entire trial as to constitute an error of constitutional magnitude.  The trial court's instruction to the jury is replete with references to the fact that the prosecution was required to prove the elements of the crimes charged beyond a reasonable doubt. (For example, see T at 870, 871, 872,  873, 880, 882, 883, 884, 887, 888, 889, 891, 892, 894, 895, 899, 901, 902, 903, 905, 906, 909, 910, 911, 914, & 915).  Therefore, although Petitioner wanted the inclusion of one additional reference to the burden of proof, the instructions, when considered as a

23

whole, were constitutionally proper and did not violate Petitioner's right to a fair trial.  See Vargas, 86 F.3d 1273 at 1280 (stating that the court's inquiry is whether the jury instructions are constitutional, not exemplary).

    c.    Causation Charge

    Petitioner's last claim with respect to the jury charge relates to the trial court's causation instruction. In Petitioner's argument to the Appellate Division, he stated that he was prejudiced because the charge given to the jury was overly broad and that the language from the standard CJI instruction would have been more clear.  The trial court charged the jury that it was sufficient to find that Petitioner's actions "forged a link in the chain of causes which actually caused death."  (T at 914-15).

    This charge was requested by the prosecution, who cited People v. Kibbe, 35 N.Y.2d 407 (1974), as the supporting law for it.  Kibbe is a landmark case on the issue of causation and language to be used in jury instructions.  See id.; see also, Henderson v. Kibbe, 431 U.S. 145 (1977)(holding that the petitioner's constitutional rights were not violated where New York trial court failed to instruct jury on issue of causation because in light of the entire trial proceedings, no error had occurred).

    Petitioner's trial counsel objected to the charge, stating that it was too broad a vision of causation for the facts of the case.  (T at 924).  However, this Court finds that the charge was proper under New York State Law.  See Davis, 270 F.3d at 123 (a finding that the petitioner was erroneously deprived of a jury instruction to which he was entitled under state law is the first step in the determination whether that error violated the petitioner's federal due process rights).

    In addition, even assuming the charge was in error under New York State law,

24

evaluating the charge in the context of the entire record, no error of constitutional magnitude occurred.  Henderson, 431 U.S. at 153;  Cupp, 414 U.S. at 146.   Unlike in Henderson, in the present case, the trial court did instruct the jury on the issue of causation. (T at 914-15).  The trial judge's charge and the attorney's arguments informed the jury that causation was an element of the crime that had to be proved beyond a reasonable doubt. (T at 806, 914-15); see Henderson, 431 U.S. at 153-54.

Accordingly, Petitioner's claim for habeas relief based on this ground should be DENIED.

### 6.  Unlawful Arrest

Petitioner next claims that the basis for his arrest was pretextual and that his incriminating statements should therefore have been suppressed.  Petitioner was arrested on April 12, 1995 on a charge of menacing, after his former girlfriend called the police and told them that Petitioner was harassing her.  (T at 33-36).  While in police custody for the menacing charge, the police interrogated Petitioner with respect to the Boylston murder. (Id. at 510-28).   During the interrogation, Petitioner gave two incriminating statements concerning his involvement in Boylston's death.  (Id. at 513, 526-28).   Petitioner argues that these statements should have been suppressed because even though the police arrested him for menacing, they were really interested in Petitioner's relation to the Boylston murder.  See (Docket No. 27 at p. 5-h).

The Court notes that Petitioner is not arguing that the statement was involuntary or coerced in any way.  The sole basis for exclusion of the statement is that it was a direct result of a "pretextual" arrest.  See (Docket No. 27 at p. 5-h).  The Petition does not assert any constitutional ground for relief.  However, construing the pleadings liberally, this Court

will assume that Petitioner is attempting to make a Fourth Amendment argument.

In Stone v. Powell, 428 U.S. 465 (1976), the habeas petitioner argued that physical evidence used in his trial was the product of an illegal arrest. The Supreme Court held that federal courts could not, on a state prisoner's petition for a writ of habeas corpus, consider a claim that evidence obtained in violation of the Fourth Amendment should have been excluded at his trial when the prisoner has had an opportunity for full and fair litigation of that claim in the state courts. 428 U.S. at 494; accord Capellan v. Riley, 975 F.2d 67, 70 (2d Cir.1992); Grey v. Hoke, 933 F.2d 117, 121 (2d Cir.1991).

Although Stone involved physical evidence seized in a search, the Supreme Court has since held that the Stone doctrine applies to a Fourth Amendment challenge to the introduction of a confession made after an allegedly unlawful arrest. Cardwell v. Taylor, 461 U.S. 571, 572-73 (1983) (reversing grant of habeas corpus where circuit court of appeals had found that there was an "unattenuated causal link" between the custodial statements made by respondent and a violation of the Fourth Amendment); see also Rodriguez v. Portuondo, No. 01-Civ-0547, 2006 WL 2168314, at *15 (S.D.N.Y.  Aug. 1, 2006); Glover v. Herbert, 431 F. Supp.2d 335, 339 (W.D.N.Y. 2006).

Under Stone, the state must provide "the opportunity to the state prisoner for full and fair litigation of the Fourth Amendment claim." Gates v. Henderson, 568 F.2d 830, 839 (2d Cir.1977).  A Fourth Amendment claim will be reviewed by a federal habeas court only: (1) where the state has provided no corrective procedures at all to redress the alleged Fourth Amendment violations; or (2) where the state has provided a corrective mechanism, but the defendant was unable to use it because of an "unconscionable breakdown in the underlying process." Capellan, 975 F.2d at 70 (citing Gates, 568 F.2d at 840).

26

As noted above, New York's procedure for addressing Fourth Amendment claims has been found to be constitutionally adequate by the Second Circuit.  See N.Y.Crim. Proc. Law § 710.10; Capellan, 975 F.2d at 70 n. 1 (noting that "federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in ⋯ [N.Y.Crim. Proc. Law § 710.10], as being facially adequate") (quotations and citations omitted).

As to the issue of "unconscionable breakdown," the Second Circuit has observed that some type of "disruption or obstruction of a state proceeding" is required.  Capellan, 975 F.2d at 70; see also Joyner, 1999 WL 608774, at *4 ("[A]n 'unconscionable breakdown' in the underlying process arises only when there has been no meaningful inquiry by the state courts into the petitioner's Fourth Amendment claim or when a 'procedural catch-22' prevents the merits of petitioner's claim from ever being heard by any state court.") (quoting Burton v. Senkowski, No. 94 Civ. 3836, 1995 WL 669908, at *4 (E.D.N.Y. Nov. 5, 1995)).

In the present case, Petitioner availed himself of New York's corrective procedures. A suppression hearing was held in Albany County Court on July 13, 1995.  Judge Breslin found that the arrest was not pretextual and that there was probable cause to arrest Petitioner of "not only menacing but on several other crimes."  (SH at 128).  Judge Breslin also concluded not only that the prosecution presented sufficient evidence of probable cause to arrest Petitioner but also that his statement to police was voluntary beyond a reasonable doubt.  Id.  There is no evidence of an unconscionable breakdown in the process afforded to Petitioner.

Thus, his Fourth Amendment claim is not reviewable by this Court, and his claim for habeas relief based on this ground should be DENIED.

### 7. Judicial Misconduct

27

In Petitioner's next ground for habeas relief, he asserts that Judge Breslin excessively reprimanded his defense counsel so as to deprive him of his right to a fair trial. Petitioner cites three incidents of reprimands that he believed impacted his trial. The first alleged reprimand in response to a prosecution objection to defense counsel's conduct, which the prosecutor deemed theatrical:

> The Court:   Mr. Katzer, that's number four.  Ladies and gentleman [of the jury], I am not going to tolerate this from either of the attorneys - any acting up or statements.  Mr Katzer, I will not warn you one more time.

> Mr. Katzer:   I sincerely apologize.

(T at 410).   The second incident that Petitioner points to occurred during a bench conference during which defense counsel asked Judge Breslin to lower his voice because he was concerned the jury could hear the judge reprimanding him.  Judge Breslin told defense counsel "[p]lease don't come up here and be pious to me."  (T at 472).  The third incident that Petitioner cites is when defense counsel asked to strike the testimony of a witness about having smoked marijuana with Petitioner in jail ,where no prior ruling had been made on its admissibility. Judge Breslin responded by saying "I congratulate you with holding a straight face and saying that, given the tenure of what has gone on here before." (T at 393).

To establish that a judge has engaged in misconduct sufficient to warrant redress, a party must typically demonstrate that the judge displayed "such a high degree of favoritism or antagonism as to make fair judgment impossible." Liteky v. United States, 510 U .S. 540, 555 (1994); see also Withrow v. Larkin, 421 U.S. 35, 47 (1975) (to succeed on a judicial misconduct claim, a party must "overcome a presumption of honesty and integrity

in those serving as adjudicators").  In reviewing a judicial misconduct claim, courts are to presume that public officials have properly discharged their official duties.  See Bracy v. Gramley, 520 U.S. 899, 909 (1997) (internal quotations and citations omitted).

To prevail on a claim based on judicial misconduct, a habeas petitioner must demonstrate that the trial judge engaged in conduct so "fundamentally unfair" that it violated the due process requirements of the United States Constitution.  See Daye v. Attorney Gen. of N.Y., 712 F.2d 1566, 1570-71 (2d Cir.1983); Salahuddin v. Strack, No. 97-CV-5789, 1998 WL 812648, at *8 (E.D.N.Y. Aug. 12, 1998).  A showing that the judge's conduct was merely "undesirable" is not sufficient.  See Daye, 712 F.2d at 1572.

Petitioner argues that as a result of the reprimands his "defense counsel may have been promp[t]ed to be unduly c[au]tious in the presentation of his case for fear of invoking the displeasure of the trial court."  (Docket No. 27 at 5-i). However, a review of the record reveals that defense counsel continued to vigorously cross examine witnesses and make objections despite the reprimands.  See e.g.,  (T at 474, 488-93, 597, 605-18, 640-52).[9] This Court finds that each of the incidents did not combine to make the trial fundamentally unfair.  In the first of the alleged reprimands the trial court indicated that he was not going to allow the objectionable conduct by "either of the attorneys."  In addition, Judge Brelsin instructed the jury on their duty to deliberate and not to draw any inferences from his rulings on objections or motions.  (T at 862).  While this Court does not condone the additional two incidents of intemperate remarks by the trial judge, in light of the well-established presumption that jurors follow their instructions, Barnard, 452 F. Supp. 2d at 193, this

---

[9] Each of these instances occurred after the last of three reprimands that Petitioner asserts in this claim for habeas relief.

instruction serves as a curative measure ensuring Petitioner's right to a fair trial.

Accordingly, Petitioner's claim for habeas relief on the ground of judicial misconduct should be DENIED.

### 8. Juror Misconduct

In Petitioner's last claim for habeas relief, he argues that his conviction should be vacated based on juror misconduct. This claim stems from a phone call that a juror made to Petitioner's attorney after the trial, but before sentencing.  On May 8, 1996, one of the jurors, Sally Strong ("Strong"), telephoned Petitioner's trial attorney.  Strong stated that she would have returned a different verdict if Petitioner had testified that he did not touch or use the hammer.  Strong signed an affidavit verifying her assertions, which was submitted to the trial court in Petitioner's original motion to set aside his verdict.  Petitioner argues that Strong's consideration of his failure to testify violated the jury instructions she was given, as well as his basic constitutional rights.  Respondent argues that Petitioner's claim lacks merit and should be dismissed.

The Second Circuit has held that "[a]ffidavits and statements by jurors may not ordinarily be used to impeach a verdict once the jury has been discharged unless extraneous influence has invaded the jury room." Jacobson v. Henderson, 765 F.2d 12, 14 -15 (2d Cir. 1985).  In addition, "[c]ourts are . . . hesitant to inquire into juror conduct and considerations if the jurors have confirmed their verdict during polling." Goode v. Mazzuca, No. 00-CV-7932, 2004 WL 1794508, *5 (S.D.N.Y. Aug. 11, 2004).

In the present case, the trial court specifically asked defense counsel if any extraneous or external influence existed in this case.  Defense counsel conceded that he was "aware of no external influence."  (S at 7).  In addition, the jury was polled after giving

their verdict and all the jurors agreed that their verdict was unanimous.  (T at 942-46). Strong confirmed that she was in full agreement with the verdict.  (T at 946).  Accordingly, this Court finds that the trial court's refusal to disturb the verdict based upon Strong's affidavit was sufficiently supported by the record.  Petitioner's claim for habeas relief based upon this ground should be DENIED.


## IV. CONCLUSION


Based on the foregoing, it is recommended that the Petition be DISMISSED. Further, because Petitioner has failed to make a substantial showing of a denial of a constitutional right, it is recommended that a certificate of appealability not issue.  28 U.S.C. § 2253(c)(2) (1996).


Respectfully submitted,


Victor E. Bianchini
United States Magistrate Judge


DATED:      February 16, 2007

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

February 16, 2007

Victor E. Bianchini
United States Magistrate Judge